Lisa KINNEY–LINDSTROM as Parent and Natural Guardian of Samantha Lindstrom, a Minor, and Alec Lindstrom, a Minor, and as the Assignee of Dr. S., Petitioner

v.

MEDICAL CARE AVAILABILITY AND REDUCTION OF ERROR FUND, Successor in Interest to the Medical Professional Liability Catastrophe Loss Fund, Respondent.

Commonwealth Court of Pennsylvania.

Decided March 23, 2009.
Ordered Published April 2, 2009.
As Amended April 29, 2009.
Reagument En Banc Denied
April 29, 2009.

James J. McEldrew, III, Philadelphia, for petitioner.

Elit R. Felix, II, Philadelphia, for respondent.

OPINION BY Senior Judge FRIEDMAN.

The Medical Care Availability and Reduction of Error Fund (MCARE Fund) has filed a motion for summary judgment (Motion) in connection with the petition for review filed by Lisa Kinney–Lindstrom (Parent) as Parent and Natural Guardian of Samantha Lindstrom, a Minor, and Alec Lindstrom, a Minor, and as the Assignee of Dr. S. in this court's original jurisdiction. We grant the Motion in part and deny the Motion in part.

In May 2003, Parent filed a medical malpractice action against Dr. S. in federal district court. The MCARE Fund defended Dr. S., and, although the parties discussed settlement, the action proceeded to trial. At trial, Parent presented expert medical testimony to show that, before Parent gave birth to twins on November 4, 1995, Dr. S. failed to diagnose Parent as suffering from a chorioamnionitis infection. As a result of this failure, both babies were infected. When the trial concluded, the jury awarded $6.25 million for Alec Lindstrom's injuries and $6.9 million for Samantha Lindstrom's injuries, for a total verdict of $13.15 million.

Parent filed a motion to mold the verdict to include delay damages, and Dr. S. filed post-trial motions. However, on August 23, 2006, Parent, Dr. S. and the MCARE Fund entered into a Settlement Agreement, Assignment of Certain Rights and Provisional Full and Final Release (Agreement). The Agreement provided that: (1) the MCARE Fund would make a single $1 million payment to Parent for the benefit of Alec and Samantha, plus an amount for delay damages and post-judgment interest; (2) Dr. S. would withdraw his post-trial motions following approval of the Agreement; (3) Dr. S. would assign to Parent his right to litigate whether the MCARE Fund is required to pay a second $1 million for two occurrences of medical malpractice, as well as unpaid delay damages and post-judgment interest on the verdict; (4) Parent would bring a declaratory judgment action in Commonwealth Court to decide those issues; and (5) the MCARE Fund would waive any requirement that Parent exhaust her administrative remedies before filing the declaratory judgment action.

The federal court approved the Agreement, and the MCARE Fund made the single $1 million payment, plus delay damages and post-judgment interest on that amount. Parent then filed her Petition seeking a declaratory judgment with this court on the above issues, and the MCARE Fund filed a response. Parent filed a motion for summary judgment, which this court denied. *See Kinney–Lindstrom v. Medical Care Availability and Reduction of Error Fund,* (Pa. Cmwlth., No. 18 M.D.2007, filed December 8, 2008) (*Kinney–Lindstrom I*). The MCARE Fund now has filed its Motion, which is before us for disposition.[1]

---

1. After the relevant pleadings are closed, a party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report. Pa. R.C.P. No. 1035.2(1).

## I. Number of Occurrences

■ The first question is whether the MCARE Fund is liable in this case for one or two occurrences under section 715(b) of the Medical Care Availability and Reduction of Error Act (MCARE Act), Act of March 20, 2002, P.L. 154, 40 P.S. § 1303.715(b). Section 715(b) provides as follows:

> If a health care provider is found liable for a claim defended by the department in accordance with subsection (a), the claim shall be paid by the fund. The limit of liability of the fund for a claim defended by the department under subsection (a) shall be $1,000,000 per occurrence.

In *Kinney–Lindstrom I,* this court held that the failure of Dr. S. to promptly perform an amniocentesis, or consult a specialist, to determine whether a chorioamnionitis infection was present in the uterus of Parent constitutes a single occurrence. *See Kinney–Lindstrom I* (citing *Donegal Mutual Insurance Company v. Baumhammers,* 595 Pa. 147, 938 A.2d 286 (2007)). The MCARE Fund has paid $1 million for a single occurrence. Thus, the MCARE Fund is entitled to summary judgment on this issue.

## II. Delay Damages/Post-Judgment Interest

The second question is whether the MCARE Fund is liable for delay damages and post-judgment interest on the entire verdict.

In *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850 (1997), our supreme court held that the Pennsylvania Medical Catastrophe Loss Fund (CAT Fund) could be liable to an insured on an equitable indemnification claim for delay damages that exceed the amount of its statutory coverage where: (1) the CAT Fund exercised exclusive control over settlement negotiations; (2) the

CAT Fund refused to tender its policy limit; and (3) that refusal was the reason that the case did not settle. *See Walsh v. Medical Professional Liability Catastrophe Loss Fund,* 576 Pa. 72, 838 A.2d 692 (2003). The court explained that indemnity is a common law remedy that shifts an entire loss from one who has been compelled by reason of some legal obligation to pay a judgment occasioned by the initial negligence of another who should bear it. *Willet; Walsh.*

In *Kinney–Lindstrom I,* this court denied summary judgment to Parent on this issue, stating that this court had some doubt as to whether the MCARE Fund had exclusive control over settlement negotiations and whether the MCARE Fund acted unreasonably in refusing to make an offer of settlement. The evidence before this court has not changed.

However, the MCARE Fund now argues that section 714(h) of the MCARE Act supersedes *Willet* and *Walsh.* Section 714(h) states:

> Delay damages and postjudgment interest **applicable to the fund's liability on a medical professional liability claim** shall be paid by the fund and shall not be charged against the participating health care provider's annual aggregate limits. The basic coverage insurer or self-insured participating health care provider shall be responsible for its proportionate share of delay damages and postjudgment interest.

40 P.S. § 1303.714(h) (emphasis added). The MCARE Fund contends that, under section 714(h), it is responsible only for its proportionate share of delay damages and post-judgment interest. The MCARE Fund further contends that, because its liability is limited to $1 million per occurrence, because this case involves only one occurrence and because the MCARE Fund already has paid delay damages and post-judgment interest on $1 million, the

MCARE Fund is entitled to summary judgment on this issue. We disagree with the MCARE Fund's reading of section 714(h).

## A. Plaintiffs and Defendants

Section 714(h) of the MCARE Act governs the MCARE Fund's responsibility for the payment of delay damages and post-judgment interest on a medical professional liability claim against a health care provider. We understand such language to refer to the MCARE Fund's liability to a **plaintiff** who has prevailed on a claim and **not** to the MCARE Fund's liability to a **defendant** health care provider who, because of the MCARE Fund's negligence, is personally liable to the plaintiff for delay damages and post-judgment interest on the claim.

Such a reading of the provision is supported by our supreme court's decision in *Lahav by Lahav v. Main Line Ob/Gyn Associates, P.C.*, 556 Pa. 245, 727 A.2d 1104 (1999). In that case, our supreme court stated that the equitable theory of indemnification does **not** apply to plaintiffs; however, defendants may seek indemnity from the CAT Fund for delay damages imposed on them in an underlying medical malpractice action. *Id.* If a plaintiff seeks to recover delay damages from the CAT Fund, the plaintiff must have a statutory basis, rather than a common law basis, for doing so. *Id.*

Here, Parent was the plaintiff in the underlying medical malpractice claim; however, Dr. S. assigned to Parent his right to seek indemnity from the MCARE Fund for unpaid delay damages and post-judgment interest imposed on him. Because Parent does not come before this court as the prevailing plaintiff, but as the defendant, section 714(h) does not prevent Parent from seeking indemnity from the MCARE Fund under the common law.[2]

## B. Basic and Excess Coverage

Moreover, section 714(h) of the MCARE Act relates to the allocation of liability for delay damages and post-judgment interest between the MCARE Fund and the basic coverage insurer. The provision states that the MCARE Fund is responsible for delay damages and post-judgment interest "applicable to the fund's liability" while the "basic coverage insurer ... shall be responsible for its proportionate share of delay damages and post-judgment interest." 40 P.S. § 1303.714(h).

The allocation of liability for delay damages and post-judgment interest between the basic coverage insurer and the MCARE Fund applies in a typical case, where the basic coverage insurer is liable to the plaintiff for the first $500,000 per occurrence, and the MCARE Fund is liable to the plaintiff for the second $500,000 per occurrence.[3] Under section 714(h), the basic coverage insurer pays delay damages

---

2. In *Elliott–Reese v. Medical Professional Catastrophe Loss Fund*, 805 A.2d 1253 (Pa. Cmwlth.2002), *aff'd*, 574 Pa. 705, 833 A.2d 138 (2003), the plaintiff in an underlying medical malpractice suit filed a mandamus petition in this court against the CAT Fund, arguing that a statutory provision identical to section 714(h) required the CAT Fund to pay to the plaintiff an insolvent primary insurer's share of delay damages and post-judgment interest. This court decided that matter pursuant to the statute, holding that the CAT Fund is liable to the plaintiff only for the CAT Fund's proportionate share of delay damages and post-judgment interest.

3. *See* section 711(d)(2) of the MCARE Act, 40 P.S. § 1303.711(d)(2) (setting the basic coverage at $500,000 per occurrence); section 711(g)(2) of the MCARE Act, 40 P.S. § 1303.711(g)(2) (stating that the MCARE Fund is responsible where a claim exceeds the basic coverage); section 712(a) of the MCARE Act, 40 P.S. § 1303.712(a) (stating that the MCARE Fund is established to pay claims in excess of basic coverage); and section 712(c)(2) of the MCARE Act, 40 P.S. § 1303.712(c)(2) (stating that the MCARE Fund's limit of liability is $500,000 per occurrence).

and post-judgment interest to the plaintiff on the first $500,000 of liability per occurrence, and the MCARE Fund pays delay damages and post-judgment interest to the plaintiff on the second $500,000 of liability per occurrence.

However, this is not the typical case because it involves an extended claim filed more than four years after the alleged tort occurred. *See* 40 P.S. § 1303.715(a). In extended claim cases, the Department of Insurance defends against the claim, and, if the plaintiff prevails, the MCARE Fund pays up to $1 million per occurrence for the claim. 40 P.S. §§ 1303.715(a) and (b). This increased liability limit means that the MCARE Fund pays both the $500,000 basic coverage limit as well as the $500,000 excess coverage limit. *See Paternaster v. Lee,* 581 Pa. 28, 863 A.2d 487 (2004) (noting that the CAT Fund pays both basic and excess coverage in an extended claim). Because the MCARE Fund pays both levels of liability, there is no need to allocate liability for delay damages and post-judgment interest pursuant to section 714(h).[4]

Because section 714(h) does not prevent a defendant from filing an action in indemnity against the MCARE Fund for unpaid delay damages and post-judgment interest,

the MCARE Fund is not entitled to summary judgment on this issue.

### ORDER

AND NOW, this 23rd day of March, 2009, it is hereby ordered that the motion for summary judgment filed by the Medical Care Availability and Reduction of Error Fund (MCARE Fund) is granted in part. Judgment is entered in favor of the MCARE Fund with respect to whether this case involved one or two occurrences of medical malpractice under section 715(b) of the Medical Care Availability and Reduction of Error Act, Act of March 20, 2002, P.L. 154, 40 P.S. § 1303.715(b). In all other respects, the motion is denied.

In addition, this court is of the opinion that the issues raised by the MCARE Fund's motion involve controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order as to those issues may materially advance the ultimate termination of the matter.

---

**4.** In *Gabroy v. Medical Professional Liability Catastrophe Loss Fund,* 886 A.2d 716 (Pa. Cmwlth.2005), *aff'd,* 590 Pa. 277, 912 A.2d 768 (2006), the defendant in an underlying medical malpractice suit filed an indemnity action against the CAT Fund, alleging that the CAT Fund was liable to him for the entire amount of delay damages and post-judgment interest because: (1) the basic coverage insur- er was insolvent; and (2) the amount due was within the CAT Fund's unexhausted liability limit. This court held that the CAT Fund was the statutory excess carrier and, thus, was not required to "drop down" to pay amounts that should have been paid by the insolvent basic coverage insurer. *Id.* Because this case does not involve a basic coverage insurer, *Gabroy* does not apply here.